**BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE POND,<br><br>           Plaintiff,<br><br>      vs.<br><br>NEW RELIC, INC., BILL STAPLES, LEW CIRNE, SUSAN D. ARTHUR, PALI BHAT, HOPE COCHRAN, ANNE DELSANTO, KEVIN GALLIGAN, DAVID HENSHALL, RK MAHENDRAN, and TAKESHI NUMOTO,<br><br>           Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Bruce Pond ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.    Plaintiff brings this stockholder action against New Relic, Inc. ("New Relic" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,"

- 1 -
COMPLAINT

collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Crewline Buyer, Inc. ("Parent") through merger vehicle Crewline Merger Sub, Inc. a wholly owned subsidiary of Crewline ("Merger Sub," collectively with Parent, "Crewline") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction"). Parent and Merger Sub are subsidiaries of Francisco Partners Management, L.P. ("Francisco Partners") and TPG Capital Management, L.P. ("TPG," collectively with Francisco Partners, "Ultimate Parents").

2.      The terms of the Proposed Transaction were memorialized in a July 31, 2023 filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Crewline will acquire all of the remaining outstanding shares of New Relic's common stock at a price of $87.00 per share in cash. As a result, New Relic will become an indirect wholly-owned subsidiary of Crewline.

3.      Thereafter, on September 14, 2023, the Company filed a Proxy Statement on Form PREM14A with the SEC in support of the Proposed Transaction, followed by a Definitive Proxy Statement on September 25, 2023 (together the "Proxy Statement").

4.      The Proposed Transaction is unfair for a number of reasons. Significantly, the Proxy Statement fails to disclose whether the committee of directors appointed to manage the sales process was comprised of disinterested directors and what powers that committee had in reviewing the Proposed Transaction, including whether the committee had the ability to veto a potential transaction that was not in the best interests of shareholders.

5.      The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for New Relic, provided by New Relic management to the Board and the Board's financial advisor Qatalyst Partners ("QP") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by QP, if any, and provide to the Company and the Board.

6.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

## **PARTIES**

7.      Plaintiff is a citizen of Missouri and, at all times relevant hereto, has been a New Relic stockholder.

8.      Defendant New Relic, a software-as-a-service company, delivers a software platform for customers to collect telemetry data and derive insights from that data in a unified front-end application. It offers a suite of products on its open and extensible cloud-based platform, which enables users to collect, store, and analyze telemetry data.  The Company is incorporated in Delaware and has its principal place of business at 188 Spear Street, Suite 1000, San Francisco, CA, 94105.  Shares of New Relic common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "NEWR".

9.     Defendant Bill Staples ("Staples") has been a Director of the Company at all relevant times.  In addition, Defendant Staples serves as the Company's Chief Executive Officer ("CEO").

10.     Defendant Lew Cirne ("Cirne") has been a director of the Company at all relevant times.  In addition, Defendant Cirne serves as the Chairman of the Board.

11.     Defendant Susan D. Arthur ("Arthur") has been a director of the Company at all relevant times.

12.     Defendant Pali Bhat ("Bhat") has been a director of the Company at all relevant times.

13.     Defendant Hope Cochran ("Cochran") has been a director of the Company at all relevant times.

14.     Defendant Anne DelSanto ("DelSanto") has been a director of the Company at all relevant times.

15.     Defendant Kevin Galligan ("Galligan") has been a director of the Company at all relevant times.

16.     Defendant David Henshall ("Henshall") has been a director of the Company at all relevant times.

17.     Defendant RK Mahendran ("Mahendran") has been a director of the Company at all relevant times.

18.     Defendant Takeshi Numoto ("Numoto") has been a director of the Company at all relevant times.

19.     Defendants identified in ¶¶ 9 - 18 are collectively referred to as the "Individual Defendants."

COMPLAINT

20.     Non-Party Parent was formed on July 25, 2023, solely for the purpose of engaging in the transactions contemplated by the Merger Agreement, and has not engaged in any business activities other than in connection with the transactions contemplated by the Merger Agreement and arranging of the equity financing and debt financing in connection with the Merger

21.     Non-Party Merger Sub is a wholly owned subsidiary of Ultimate Parents created to effectuate the Proposed Transaction.

22.     Non-Party Ultimate Parent Francisco Partners is a leading global investment firm that specializes in partnering with technology businesses.

23.     Non-Party Ultimate Parent TPG is a leading global alternative asset management firm.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

25.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its headquarters in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

27.     New Relic, a software-as-a-service company, delivers a software platform for customers to collect telemetry data and derive insights from that data in a unified front-end application. It offers a suite of products on its open and extensible cloud-based platform, which enables users to collect, store, and analyze telemetry data.

28.     The Company's platform also provides New Relic Instant Observability, an open-source ecosystem of quickstarts that delivers pre-built integrations, dashboards, and alerts for approximately 450 technologies and frameworks; and supports custom app development through common open-source frameworks, a library of existing applications, and a development environment. The Company sells its products through direct sales organizations, and online and offline sales in the United States and internationally.

29.     In a press release on May 23, 2023 for the financial results of fiscal year 2023 ended March 31, 2023, the Company highlighted its performance results and financial success. For example, the Company reported total revenue of $925.6 million, up 18% from one year ago; consumption revenue of $707.7, up 60% year over year; and gross margin was 73.4%, compared to 67.4% one year ago.

30.     Speaking on the results, Defendant and CEO Staples stated, "We finished the fiscal year with consumption revenue growing in excess of 30% excluding the impact of migrations, with profitability at a new high watermark, and with our innovation leadership recognized broadly.

COMPLAINT

I'm very grateful for such committed customers and all the hard work across the company which made fiscal 2023 a terrific year."

31.     Staples continued, noting the Company's likelihood for future success: "We look forward to fiscal 2024 and the innovation roadmap, continued customer growth and expansion, and the final chapter of our subscription business which will result in a simpler, more profitable, and high-growth New Relic."

32.     The financial results are not an anomaly, but rather, are indicative of a trend of continued success by New Relic.  Clearly, based upon these positive results and outlook, the Company is likely to have tremendous future success.

33.     Despite this upward trajectory, the Individual Defendants have caused New Relic to enter into the Proposed Transaction without providing requisite information to New Relic stockholders such as Plaintiff.

***The Flawed Sales Process***

34.     As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

35.     Notably, the Proxy Statement indicates that QP initially suggested the formation of a transaction committee, but that it was not formed due to conflicts of interest. The Proxy Statement fails to provide adequate information as to the rationale that stopped the formation of a committee at that time and fails to disclose the conflicts of interest.

36.     The Proxy Statement fails to indicate when the committee of directors to review the Proposed Transaction (the "Transaction Committee") was formed.

37.     The Proxy Statement further fails to disclose whether the Transaction Committee that was eventually formed had any conflicts of interest. This is especially important since Defendant Cirne, Chairman of the Board, was removed from the Transaction Committee during negotiations due to a conflict of interest.

38.     The Proxy Statement fails to disclose why QP only reached out to 16 parties, of the 53 contacted during the go-shop process, during Phase 1 of the sale process in March 2023.

39.     Moreover, the Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Crewline, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Proxy Statement, if so, in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

40.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

41.     On July 31, 2023, New Relic issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **SAN FRANCISCO — July 31, 2023 —** New Relic. (NYSE: NEWR), the all-in-one observability platform for every engineer, today announced that it has entered into a definitive agreement to be acquired by Francisco Partners, a leading global investment firm that specializes in partnering with technology businesses, and TPG, a leading global alternative asset management firm, for $87.00 per share in cash. The all-cash transaction values New Relic at an equity valuation of approximately $6.5 billion.
>
> The purchase price represents a premium of approximately 26% to New Relic's 30-day volume-weighted average closing price ending on July 28, 2023, and approximately a 30% premium to New Relic's last-twelve-months volume-weighted average closing price ending on July 28, 2023. Upon completion of the

transaction, New Relic will become a private company with enhanced flexibility to continue investing in its leading observability platform and meeting the data and efficiency needs of its customers.

Hope Cochran, Lead Independent Director of the New Relic Board, said, "We are pleased to have reached this agreement with Francisco Partners and TPG, which delivers significant, immediate value to shareholders. This transaction is the result of a comprehensive process that included engagement with both financial and strategic parties, led by a transaction committee that included representatives of two of our largest public shareholders. The Board is unanimous in its belief that today's transaction appropriately reflects the Company's innovative and strong business while maximizing shareholder value, and I am immensely proud to have worked alongside New Relic's outstanding management team and my fellow Directors to transform New Relic at this pivotal time."

Lew Cirne, Founder and Executive Chairman of the New Relic Board, said, "Ever since our founding over 15 years ago, New Relic has created and delivered groundbreaking innovations, with a maniacal focus on delivering a leading observability platform to help our customers deliver better software faster. We are pleased to partner with Francisco Partners and TPG, who are committed to continuing to build upon New Relic's strong foundation and achieve its full potential."

Bill Staples, CEO of New Relic, said, "New Relic has made significant progress on its consumption business transition and, together with Francisco Partners and TPG, we will have the resources and flexibility to not only complete the final chapter of this transition, but also accelerate our strategy and provide customers with a standardized data-driven practice that any company can benefit from. I am proud of all that the team at New Relic has achieved, and I thank each of our employees for executing in a dynamic market and contributing to our continued success."

"We've always admired New Relic's best-in-class technology platform and New Relic's continued commitment to provide its customers with a product that continually exceeds expectations," said Dipanjan "DJ" Deb, co-founder & CEO of Francisco Partners.

"We continue to see tremendous opportunity for New Relic given their unique position in an evolving industry, and as a private company we believe they will achieve their full potential and optimize observability," said Brian Decker and Evan Daar, Partners at Francisco Partners.

"As technology continues to become more feature rich and AI-enabled, the need for visibility is only increasing," said Nehal Raj, Co-Managing Partner of TPG Capital. "New Relic is a pioneer in the observability market, providing developers and engineers with a unified platform to proactively monitor and manage mission critical applications."

"Digital infrastructure management is a key thematic focus area for TPG, and we're excited to partner with New Relic to grow the company's customer relationships and continue enhancing its product capabilities," continued TPG's Art Heidrich. TPG will invest in New Relic through TPG Capital, the firm's U.S. and European late-stage private equity platform.

"We have appreciated the partnership with New Relic's directors and management team over the past few years as the company has executed its business model transformation and achieved profitable growth. We enthusiastically support this transaction, which we firmly believe represents the best outcome for shareholders," said directors RK Mahendran, Partner at HMI Capital Management, and Kevin Galligan, Partner at JANA Partners.

**Approvals and Timing**

The transaction was approved by the New Relic Board of Directors. New Relic shareholders Lew Cirne, JANA Partners LLC, and HMI Capital Management, L.P., representing approximately 20% of New Relic's outstanding shares, have signed voting agreements in support of the transaction. As part of this transaction, Mr. Cirne will be rolling over approximately 40% of his beneficial shareholdings.

The transaction is expected to close in late 2023 or early 2024, subject to the satisfaction of customary closing conditions and certain regulatory items, including the approval of New Relic's shareholders and expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976. The transaction is not subject to a financing condition. Upon completion of the transaction, New Relic common stock will no longer be listed on any public market.

Under the terms of the agreement, New Relic may solicit alternative acquisition proposals from third parties during a 45-day "go-shop" period following the date of execution of the merger agreement. The New Relic Board of Directors will have the right to terminate the merger agreement to enter into a superior proposal subject to the terms and conditions of the merger agreement. There can be no assurances that the "go-shop" will result in a superior proposal. New Relic does not intend to disclose developments related to the solicitation process unless it determines such disclosure is appropriate or is otherwise required.

***Potential Conflicts of Interest***

42.     The breakdown of the benefits of the deal indicates that New Relic insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have

secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of New Relic.

43.    Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| Name of Beneficial Owner | Number | Percentage |
|---|---|---|
| **Named Executive Officers and Directors:** | | |
| William Staples (1) | 225,986 | * |
| David Barter (2) | 24,158 | * |
| Mark Dodds (3) | 17,549 | * |
| Kristy Friedrichs (4) | 75,656 | * |
| Thomas Lloyd (5) | 33,199 | * |
| Mark Sachleben (6) | 503,602 | * |
| Lewis Cirne (7) | 7,613,399 | 10.7% |
| Susan Arthur (8) | 6,796 | * |
| Pali Bhat (9) | 3,903 | * |
| Caroline Watteeuw Carlisle (10) | 21,881 | * |
| Hope Cochran (11) | 20,911 | * |
| Anne DelSanto (12) | 11,224 | * |
| Kevin Galligan (13) | 3,215,426 | 4.5% |
| David Henshall (14) | 16,001 | * |
| RK Mahendran (15) | 5,065,082 | 7.1% |
| Takeshi Numoto (16) | 4,918 | * |
| All current executive officers and directors as a group (15 persons) (17): | 16,784,035 | 23.6% |
| **5% Stockholders:** | | |
| Eminence Capital, LP (18) | 5,120,416 | 7.2% |
| HMI Capital Management, LP (19) | 5,065,082 | 7.1% |
| The Vanguard Group (20) | 5,639,443 | 7.9% |

44.    Additionally, Company insiders currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| Name | Unvested Company Options ($) | Unvested RSUs ($) | Unvested PSUs ($) |
|---|---|---|---|
| William Staples | 368,235 | 12,154,944 | 19,014,569 |
| David Barter | — | 6,458,358 | 9,660,503 |
| Mark Dodds | — | 6,020,748 | 6,522,193 |

| | | | |
|---|---|---|---|
| Kristy Friedrichs | 172,054 | 4,182,525 | 2,450,094 |
| Thomas Lloyd | 69,661 | 3,374,817 | 3,608,476 |

45.    Moreover, certain employment agreements with certain New Relic executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

*Golden Parachute Compensation*

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/Benefits ($)(3) | Total ($)(4) |
|---|---|---|---|---|
| William Staples | 1,755,000 | 31,537,749 | 63,000 | 33,355,749 |
| David Barter | 731,000 | 16,118,861 | 42,000 | 16,160,861 |
| Mark Dodds | 920,000 | 12,542,941 | 42,000 | 12,584,941 |
| Kristy Friedrichs | 743,750 | 6,804,673 | 42,000 | 6,846,673 |
| Thomas Lloyd | 656,000 | 7,052,954 | 42,000 | 7,750,954 |

46.    The Proxy Statement fails to adequately disclose communications regarding post-transaction employment. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

47.    Thus, while the Proposed Transaction is not in the best interests of New Relic, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Proxy Statement*

48.    On September 14 and 25, 2023, the New Relic Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act,

fails to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

49.     Specifically, the Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Proxy Statement fails to disclose:

    a.     Why a transaction committee was not formed when initially suggested by QP, including the conflicts of interest;

    b.      When the committee the Transaction Committee was formed;

    c.     Whether the Transaction Committee had any conflicts of interest;

    d.     Why QP only reached out to 16 parties, of the 53 contacted during the go-shop process, during Phase 1 of the sale process in March 2023;

    e.     Whether the confidentiality agreements entered into by the Company with Crewline and Ultimate Parents differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

    f.     All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Crewline and Ultimate Parents, would fall away; and

g.     Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning New Relic Financial Projections*

50.    The Proxy Statement fails to provide material information concerning financial projections for New Relic provided by New Relic management to the New Relic Board and QP and relied upon by New Relic in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

51.    Notably, the Proxy Statement reveals that as part of its analyses, QP reviewed certain "business and financial information of the Company."

52.    The Proxy Statement should have, but fails to provide, certain information in the projections that New Relic management provided to the Board and QP. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

53.    With regards to the *Initial Long-Term Model*, the Proxy Statement fails to disclose:

a.  The inputs, metrics, and assumptions used to determine gross profit; and

b.  The inputs, metrics, and assumptions used to determine operating income.

54.    With regards to the *Updated Long-Term Model*, the Proxy Statement fails to disclose:

a.  The inputs, metrics, and assumptions used to determine gross profit; and

b.   The inputs, metrics, and assumptions used to determine operating income.

55.     The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

56.     The Proxy Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various sets of projections rely.

57.     This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

58.     Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the QP's financial analyses, or make an informed decision whether to vote his shares in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by QP*

59.     In the Proxy Statement, QP describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.

Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

60.     With respect to the *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose:

a.  The implied net present value of the estimated future unlevered free cash flows of the Company, and the inputs, metrics, and assumptions used to determine them;

b.  The inputs, metrics, and assumptions used to determine the discount rates of 11.5% to 14.0%;

c.  The weighted average cost of capital for the Company utilized;

d.  The inputs, metrics, and assumptions used to determine the implied net present value of a corresponding terminal value of the Company;

e.  The inputs, metrics, and assumptions used to determine the long-term effective cash tax rate of 19%;

f.  The specific inputs and assumptions used to determine the multiple reference range of 25.0x to 37.5x;

g.  The net cash of the Company as of June 30, 2023 utilized;

h.  The implied net present value of estimated federal tax savings, and the inputs, metrics, and assumptions used to determine the same, including specifically net operating losses for the fiscal years 2028 and beyond;

i.  The Company's redeemable non-controlling interest in New Relic K.K. (the Company's Japanese joint venture), as of June 30, 2023;

j.  The number of fully-diluted shares of the New Relic common stock utilized; and

COMPLAINT

k.   The degree of estimated dilution to current stockholders and the inputs, metrics, and assumptions used to determine the same, including specifically, the estimated net effects of equity issuances and cancellations related to future equity compensation.

61.   With respect to the *Selected Companies Analysis*, the Proxy Statement fails to disclose:

a.   The specific metrics observed for each selected company, including the metrics calculated by third-party research analyst consensus estimates as of July 28, 2023 and the fully diluted enterprise values;

b.   The number of fully-diluted shares of the Company utilized; and

c.   The specific inputs and assumptions used to determine the multiple range of 3.5x to 6.0x utilized.

62.   With respect to the *Selected Transactions Analysis*, the Proxy Statement fails to disclose:

a.   The specific metrics observed for each selected company, including the metrics calculated by third-party research analyst consensus estimates as of July 28, 2023 and the fully diluted enterprise values;

b.   The number of fully-diluted shares of the Company utilized; and

c.   The specific inputs and assumptions used to determine the multiple ranges of 4.0x to 8.0x and 20.0x to 35.0x utilized.

63.   The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

COMPLAINT

64.     The Proxy Statement also fails to provide the specific bases and adjustments upon which the assumptions underlying the various sets of projections rely.

65.     This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

66.     Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the financial analyses created by New Relic, or make an informed decision whether to vote his shares in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**<u>(Against All Defendants)</u>**

67.     Plaintiff repeats all previous allegations as if set forth in full herein.

68.     Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

69.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent

or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

70.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

71.     The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

72.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

73.     The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

74.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

75.     Plaintiff repeats all previous allegations as if set forth in full herein.

76.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

77.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

78.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of New Relic's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading.  As a result,

the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

79.     The Individual Defendants acted as controlling persons of New Relic within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause New Relic to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled New Relic and all of its employees.  As alleged above, New Relic is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: September 28, 2023

**BRODSKY SMITH**

By: *Evan J. Smith*

Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*

COMPLAINT